UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

ROMAN CATHOLIC CHURCH OF THE
ARCHDIOCESE OF SANTA FE,   No. 18-13027 t11

    Debtor.

ROMAN CATHOLIC CHURCH OF THE
ARCHDIOCESE OF SANTA FE,

    Plaintiff,

v.   Adv. No. 20-1026 t

UNITED STATES OF AMERICA
SMALL BUSINESS ADMINISTRATION,

    Defendant.

## **OPINION**

The Court held a preliminary injunction hearing in this proceeding on April 30, 2020. During the hearing, the Court converted it to a trial on the merits, as allowed by Fed. R. Civ. P. 65(a)(2).[1] For the reasons stated herein, Plaintiff is entitled to relief under its complaint.

I.    FINDINGS OF FACT[2]

The Court finds:

---

[1] Rule 65 is incorporated by reference by Fed. R. Bankr. P. 7065. The Court took this admittedly unusual step for two reasons. First, there is enormous time pressure in this proceeding, for the reasons stated below. To provide any effective relief, and/or to avoid a substantial damages claim from accruing, an immediate decision was necessary. Second, the factual issues in the proceeding were few and noncontroversial.

[2] The Court took judicial notice of the docket in the main case and this adversary proceeding. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may sua sponte take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) (same).

Plaintiff is a catholic archdiocese in New Mexico and a New Mexico corporation. Its principal place of business is at 4000 St. Josephs Place NW, Albuquerque, New Mexico. Plaintiff has 70 employees. On December 3, 2018, Plaintiff filed this chapter 11 case. Since then Plaintiff has been operating as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

Defendant (sometimes referred to as the "SBA") is an agency of the United States of America. Its central office is located at 409 Third Street, S.W., Washington DC 20416.

On or about March 27, 2020, the President signed the Coronavirus Aid, Relief, and Economic Security Act, H.R. 748, P.L. 115-136 (the "CARES Act"). The CARES Act is intended, among other things, to provide stimulus to the economy by distributing approximately $2.3 trillion to various industries, programs, and individuals.

The CARES Act temporarily added a new "Paycheck Protection Program" (the "PPP") to be administered by Defendant. The CARES Act provisions relating to the PPP provide in pertinent part:

Section 1102. Paycheck Protection Program

(a) IN GENERAL.—Section 7(a) of the Small Business Act (15 U.S.C. 636(a)) is amended—
(1) in paragraph (2)—
(A) in subparagraph (A), in the matter preceding clause (i), by striking "and (E)" and inserting "(E), and (F)"; and
(B) by adding at the end the following:
"(F) PARTICIPATION IN THE PAYCHECK PROTECTION PROGRAM.—In an agreement to participate in a loan on a deferred basis under paragraph (36), the participation by the Administration shall be 100 percent."; and
(2) by adding at the end the following:
"(36) PAYCHECK PROTECTION PROGRAM.—
"(A) DEFINITIONS.—In this paragraph—
. . .
"(iv) the term 'eligible recipient' means an individual or entity that is eligible to receive a covered loan;
. . .

"(B) PAYCHECK PROTECTION LOANS.—Except as otherwise provided in this paragraph, the Administrator may guarantee covered loans under the same terms, conditions, and processes as a loan made under this subsection.

. . .

"(D) INCREASED ELIGIBILITY FOR CERTAIN SMALL BUSINESSES AND ORGANIZATIONS.—

"(i) IN GENERAL.—During the covered period, in addition to small business concerns, any business concern, nonprofit organization, veterans organization, or Tribal business concern described in section 31(b)(2)(C) shall be eligible to receive a covered loan if the business concern, nonprofit organization, veterans organization, or Tribal business concern employs not more than the greater of—

"(I) 500 employees; or

"(II) if applicable, the size standard in number of employees established by the Administration for the industry in which the business concern, nonprofit organization, veterans organization, or Tribal business concern operates.

. . .

(F) ALLOWABLE USES OF COVERED LOANS.—

"(i) IN GENERAL.—During the covered period, an eligible recipient may, in addition to the allowable uses of a loan made under this subsection, use the proceeds of the covered loan for—

"(I) payroll costs;

"(II) costs related to the continuation of group health care benefits during periods of paid sick, medical, or family leave, and insurance premiums;

"(III) employee salaries, commissions, or similar compensations;

"(IV) payments of interest on any mortgage obligation (which shall not include any prepayment of or payment of principal on a mortgage obligation);

"(V) rent (including rent under a lease agreement);

"(VI) utilities; and

"(VII) interest on any other debt obligations that were incurred before the covered period.

"(ii) DELEGATED AUTHORITY.—

"(I) IN GENERAL.—For purposes of making covered loans for the purposes described in clause (i), a lender approved to make loans under this subsection shall be deemed to have been delegated authority by the Administrator to make and approve covered loans, subject to the provisions of this paragraph.

"(II) CONSIDERATIONS.—In evaluating the eligibility of a borrower for a covered loan with the terms described in this paragraph, a lender shall consider whether the borrower—

"(aa) was in operation on February 15, 2020; and

"(bb)(AA) had employees for whom the borrower paid salaries and payroll taxes; or

"(BB) paid independent contractors, as reported on a Form 1099–MISC.

. . .

-3-

SEC. 1106. <u>Loan Forgiveness</u>.

(a) DEFINITIONS.—In this section—
(1) the term "covered loan" means a loan guaranteed under paragraph (36) of section 7(a) of the Small Business Act (15 U.S.C. 636(a)), as added by section 1102;
. . .
(7) the term "expected forgiveness amount" means the amount of principal that a lender reasonably expects a borrower to expend during the covered period on the sum of any—
(A) payroll costs;
(B) payments of interest on any covered mortgage obligation (which shall not include any prepayment of or payment of principal on a covered mortgage obligation);
(C) payments on any covered rent obligation; and
(D) covered utility payments; and
(8) the term "payroll costs" has the meaning given that term in paragraph (36) of section 7(a) of the Small Business Act (15 U.S.C. 636(a)), as added by section 1102 of this Act.
(b) FORGIVENESS.—An eligible recipient shall be eligible for forgiveness of indebtedness on a covered loan in an amount equal to the sum of the following costs incurred and payments made during the covered period:
(1) Payroll costs.
(2) Any payment of interest on any covered mortgage obligation (which shall not include any prepayment of or payment of principal on a covered mortgage obligation).
(3) Any payment on any covered rent obligation.
(4) Any covered utility payment.

SEC. 1114. <u>Emergency Rulemaking Authority</u>.

Not later than 15 days after the date of enactment of this Act, the Administrator shall issue regulations to carry out this title and the amendments made by this title without regard to the notice requirements under section 553(b) of title 5, United States Code.

As can be seen from the statute, funds from the PPP have the following extremely favorable terms:

- No collateral or personal guarantees are required;
- Funds are available regardless of the applicant's creditworthiness.
- No fees are charged;
- The loans mature in 2 years;
- The interest rate is 1%; and
- *The loans are fully forgiven if the funds are used as required.*

The PPP has very few eligibility requirements. Applicants must:

1. Be a small business concern or any business concern, nonprofit organization, veterans organization, or Tribal business concern described in section 31(b)(2)(C) of the Small Business Act;
2. Have fewer than 500 employees or, if applicable, the size standard in number of employees established by the Administration for the industry in which the business concern, nonprofit organization, veterans organization, or Tribal business concern operates;
3. Have been in operation on February 15, 2020; and
4. Have had employees to whom the applicant pays salaries and payroll taxes.

Faith-based organizations like Plaintiff are eligible to receive PPP loans. Plaintiff clearly met all eligibility requirements under the CARES Act.

Funds available under the PPP are limited and administered on a first-come, first-served basis. Demand for the PPP funds has been overwhelming. The funds were exhausted once, but were replenished by Congress on or about April 24, 2020. The Court does not know the current status of PPP fund availability or whether Congress will replenish the fund again.

On April 2, 2020, Defendant issued Official SBA Form 2484, which is the form applicants must use to apply for a PPP loan. The form states that the applicants "presently are involved in any bankruptcy" are not eligible.[3]

---

[3] Defendant introduced into evidence its form of application for a regular 7(a) loan. The application has sixteen questions, including whether the applicant or any affiliate has ever filed for bankruptcy protection. The application asks for details on a separate sheet if the question is answered "yes."

On April 15, 2020, Defendant published in the Code of Federal Regulations an "interim final rule" implementing the PPP (the "First Rule"). The First Rule, like the CARES Act, says nothing about bankruptcy debtors being ineligible for the PPP.[4]

Plaintiff filed a loan application on April 20, 2020, for a $900,000 PPP loan. The lender, Wells Fargo, did not act on the application because of the bankruptcy ineligibility provision.

On April 28, 2020, the SBA issued another interim final rule (the "Second Rule"). The Second Rule purports to disqualify bankruptcy debtors from the PPP:

> *Will I be approved for a PPP loan if my business is in bankruptcy?*
> No. If the applicant or the owner of the applicant is the debtor in a bankruptcy proceeding, either at the time it submits the application or at any time before the loan is disbursed, the applicant is ineligible to receive a PPP loan. . . .The Administrator, in consultation with the Secretary, determined that providing PPP loans to debtors in bankruptcy would present an unacceptably high risk for an unauthorized use of funds or non-repayment of unforgiven loans.

Like many New Mexico businesses, Plaintiff has been severely financially affected by the federal, state, and local government "lockdown" orders issued in response to the coronavirus pandemic. On March 23, 2020, the New Mexico Department of Health issued a "stay at home" order, prohibiting mass gatherings and requiring all non-essential businesses to cease in-person operations. On April 6, 2020, the Governor issued Executive Order 2020-22, which extended the

---

[4] The First Rule adopts the ineligibility standards in section 120.110, title 13 of the Code of Federal Regulations ("CFR 120.110"), as further described in SBA's Standard Operating Procedure 50-10, Subpart B, Chapter 2 ("SOP 50-10"). *See* First Interim Rule, 2(c) ("Businesses that are not eligible for PPP loans are identified in 13 CFR 120.110 and further described in SBA's Standard Operating Procedure"). The SOP 50-10 provides that a "Small Business Applicant" must, among other things: be an operating business; be located in the United States; be "small" (as defined by the SBA); and demonstrate the need for the desired credit. *See* SOP 50-10, pg. 85. The SOP 50-10 also provides that the businesses listed in CFR 120.110 are not eligible for an SBA loan. Bankruptcy debtors are not among the listed ineligible businesses. Nothing in the SOP 50-10 makes the Plaintiff ineligible for a PPP loan.

stay at home order through April 30, 2020. The Governor recently announced that she will further extend the stay at home order through at least May 15, 2020.

A major source of Plaintiff's income is revenue derived from monthly parish assessments. The parishes, in turn, derive a significant portion of their revenue from money collected during masses. Furthermore, a significant portion of the collections occur during Holy Week, which coincided with the lockdown. Because the parishes have been closed to their parishioners and the public, Plaintiff is losing about $300,000 a month in revenue it otherwise would realize from normal operations. This loss of income will continue until, at a minimum, the Governor's lockdown orders are lifted. Without a PPP loan, the Plaintiff's operations and reorganization effort will be substantially adversely affected. The PPP funds are essential to Plaintiff's "fresh start."

Plaintiff has the financial and accounting ability to follow the PPP rules about use of the funds. Plaintiff is careful in its accounting, files complete and detailed monthly operating reports in this case, and is more than willing to separately account for how it would use PPP funds.

On April 28, 2020, Plaintiff filed a motion to approve its proposed PPP loan as post-petition financing under 11 U.S.C. § 364.

With the Second Rule, Defendant made a final determination that Plaintiff's application will be denied. There are no administrative appeals or remedies available to Plaintiff to seek review of Defendant's decision to exclude it from the PPP.

## II. DISCUSSION

A.   Jurisdiction and Venue.

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334. Jurisdiction is proper under the judicial review provisions of the Administrative Procedure Act, 5 U.S.C. § 701 et seq. (the "APA"). This is a core proceeding pursuant to 28 U.S.C.

§ 157(b)(2)(A). Defendant's decision to exclude Plaintiff from the PPP is core: it goes to the heart of case administration, as the funds were intended by Congress to replace Plaintiff's lost revenue caused by the government lockdowns. In addition, the Court concludes that a proceeding to determine whether a governmental unit has violated 11 U.S.C. § 525(a) is core.

Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)(2) and (e)(1) and 28 U.S.C. § 1409(a).

B.  The Administrative Procedure Act.

This proceeding is brought in part under the APA. 5 U.S.C. § 706 provides:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall--
>   (1) compel agency action unlawfully withheld or unreasonably delayed; and
>   (2) hold unlawful and set aside agency action, findings, and conclusions found to be--
>     (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>     (B) contrary to constitutional right, power, privilege, or immunity;
>     (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
>     (D) without observance of procedure required by law;
>     (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or
>     (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.
>
> In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

In *New Mexico Health Connections v. United States Department of Health & Human Services*, 946 F.3d 1138, 1161 (10th Cir. 2019), the Tenth Circuit held that "[i]n reviewing an APA challenge to agency action, a district court acts as an appellate court." The scope of the court's "review under this standard is "narrow"" and the court "is not to substitute its judgment for that of

the agency." *Judulang v. Holder*, 565 U.S. 42, 52-53 (2011) (citation omitted). Nevertheless, courts retain an important role "in ensuring the agencies have engaged in reasoned decisionmaking" by examining the reasons for the agency decisions, or lack thereof, and determining "whether the decision was based on consideration of the relevant factors and whether there has been a clear error of judgment." *Id.* at 53 (citation omitted); *Dep't of Commerce v. N.Y.*, 139 S. Ct. 2551, 2569 (2019) (although a court may not substitute its judgment for that of the agency, it must ensure that the agency remained "within the bounds of reasoned decisionmaking").

Here, the question is whether Plaintiff is entitled to relief under § 706(2)(A) (arbitrary and capricious) and/or (C) (in excess of authority).

1. <u>Arbitrary and Capricious</u>. Plaintiff argues that Defendant's prohibition against bankruptcy debtors is arbitrary and capricious, in violation of 5 U.S.C. § 706(2)(A). "Under the arbitrary and capricious standard, we must determine whether the agency considered all relevant factors and whether there has been a clear error of judgment." *IMC Kalium Carlsbad Inc. v. Interior Bd. of Land Appeals*, 206 F.3d 1003, 1012 (10th Cir. 2000) (internal quotation marks omitted). An agency rule is "arbitrary and capricious if the agency has relied on factors [that] Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicles Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). While the APA's arbitrary and capricious standard is generally deferential, prohibiting the court from substituting its judgment for the agency's, *Utahns for Better Transp. v. U.S. Dep't of Transp.*, 305 F.3d 1152, 1164 (10th Cir. 2002), this principle is borne of the notion that an agency typically has "greater familiarity with the ever-changing facts and circumstances

surrounding the subjects" it regulates. *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000). No such deference is given to an action taken without statutory authority. *Util. Air Regulatory Group v. E.P.A.*, 573 U.S. 302, 321 (2014).

The Court finds that Defendant's decision to exclude bankruptcy debtors from the PPP is arbitrary and capricious. While a borrower's bankruptcy status clearly is relevant for a normal loan program, the PPP is the opposite of that. It is not a loan program at all. It is a grant or support program. The statute's eligibility requirements do not include creditworthiness. Quite the contrary, the CARES Act makes PPP money available regardless of financial distress. Financial distress is presumed. Given the effect of the lockdown, many, perhaps most, applicants would not be able to repay their PPP loans. They don't have to, because the "loans" are really grants. Repayment is not a significant part of the program. That is why Congress did not include creditworthiness as a requirement.

Considering the unprecedent nature of the PPP and the circumstances underlying its enactment, there is no reason to assume that Congress intended to cede to Defendant discretion to exclude bankruptcy debtors from the PPP. Rather, a review of the CARES Act in its entirety shows the opposite. *E.P.A.*, 573 U.S. at 321 (Congress's intent may be discerned by examining the enactment in its entirety); *Brown & Williamson*, 529 U.S. at 133 (2000) (same). As discussed below, another CARES Act program (direct loans to mid-sized businesses)[5] specifically excludes bankruptcy debtors. The unmistakable implication is that Congress did not intend to exclude bankruptcy debtors from the PPP.

The structure of the PPP is simple: PPP funds must be used for payroll, mortgage interest, rent, or utilities. If the funds are used as required, they do not have to be repaid. Given the obvious

---

[5] § 4003(c)(3)(D).

purpose of the PPP, it was arbitrary and capricious for Defendant to engraft a creditworthiness test where none belonged.

Furthermore, the test itself (are you a bankruptcy debtor?) is arbitrary and capricious. Why that eligibility criterion and not one of the many others that would more accurately gauge a borrower's likelihood of complying with the PPP?[6] It makes no sense, and it is unsupported by the terms of the CARES Act. *See E.P.A.*, 573 U.S. 302, 324 (2014). ("We expect Congress to speak clearly if it wishes to assign to an agency decisions of vast 'economic and political significance.'") (citation omitted).

Defendant's only articulated justification for the bankruptcy disqualification is that bankruptcy debtors "present an unacceptably high risk for an unauthorized use of funds or non-repayment of unforgiven loans." As Judge David Jones said last week in ruling on a similar issue, the justification "is completely frivolous."[7] It is also arbitrary and capricious. Plaintiff, like all chapter 11 debtors in possession, is under the supervision of the Court and the United States Trustee's office. It must file detailed monthly operating reports, attaching bank statements. The unsecured creditors committee appointed in the case is very active and watches how Plaintiff spends money. All creditors have access to the docket and the monthly operating reports. In short, the chapter 11 bankruptcy system is a hundred-eyed Argus. In contrast, nondebtors can spend their

---

[6] Other possible underwriting criteria include: balance sheet insolvency; inability to pay debts as they become due; recent profitability; credit score; pending collection actions; current default on secured or unsecured debts; increases in credit card or other debt to pay bills; current ration of accounts receivable to accounts payable; and presence or absence of cash flow problems. There are many more.

[7] *Hidalgo County Emergency Service Foundation v. Jovita Carranza (In re Hidalgo County Emergency Service Foundation)*, Case no. 19-20497; Adv. pro. No. 20-2006, (Bankr. S.D. Tex.); (transcript of oral ruling rendered April 24, 2020).

PPP funds without any oversight. Defendant's justification for excluding bankruptcy debtors is so weak the Court has to wonder if Defendant really believes it.

The Court concludes that Defendant's decision to insert underwriting criteria into the PPP, and then to use the bankruptcy debtor test as the sole underwriting criterion, is both arbitrary and capricious.

2.  <u>Exceeds Statutory Authority</u>. Plaintiff also argues that the prohibition against debtors exceeds Defendant's authority under the CARES Act, in violation of 5 U.S.C. § 706(2)(C). The Court agrees.

> In determining whether an agency's regulations are valid under a particular statute, as the Supreme Court's decision in *Chevron* instructs, we begin with the question of whether the statute unambiguously addresses the "precise question at issue." *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council*, 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *accord United Keetoowah Band of Cherokee Indians of Okla. v. U.S. Dep't of Hous. & Urban Dev.*, 567 F.3d 1235, 1239–40 (10th Cir. 2009); *see also Keller Tank Servs. II, Inc. v. Comm'r*, 848 F.3d 1251, 1269 (10th Cir. 2017) (noting that "[t]he *Chevron*-deference analysis proceeds in two steps," and explicating them both). "If Congress has spoken *directly* to the issue, that is the end of the matter; the court, as well as the agency, must give effect to Congress's unambiguously expressed intent." *Keetoowah Band*, 567 F.3d at 1240 (emphasis added). However, if the statute is silent or ambiguous as to the precise question at issue, a court must determine whether to afford the agency's interpretation *Chevron* deference. *Id.* Such deference is appropriate if " 'Congress delegated authority to the agency generally to make rules carrying the force of law' and the agency's interpretation of the statute was issued pursuant to that authority." *Carpio v. Holder*, 592 F.3d 1091, 1096–97 (10th Cir. 2010) (quoting *United States v. Mead Corp.*, 533 U.S. 218, 226–27, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001)). If these conditions are satisfied, then we defer to the agency's interpretation of the statute as long as it is not "arbitrary, capricious, [n]or manifestly contrary to the statute," *id.* at 1096 (alteration in original) (quoting *Herrera–Castillo v. Holder*, 573 F.3d 1004, 1007 (10th Cir. 2009)).

*New Mexico v. Dep't of Interior*, 854 F.3d 1207, 1221 (10th Cir. 2017).

The CARES Act directly addresses the PPP eligibility requirements. It charged Defendant with issuing "regulations to carry out this title. . . ." Section 1114. Defendant had no authority under this charge to change the eligibility requirements. That, however, is exactly what it did.

Defendant exceeded its authority by trying to prohibit bankruptcy debtors from getting PPP funds. It is not entitled to *Chevron* deference.

Defendant's unlawful behavior is made clear by the CARES Act § 4003(c)(3)(D), which relates to loans to "mid-sized businesses." Unlike PPP loans, the loans to mid-size businesses are intended to be repaid. For that reason, Congress specified *in the statute* that bankruptcy debtors are not eligible. Defendant should have read and understood the fundamental differences between the mid-size business loan program (real loans) and the PPP (grants or support payments). Defendant's refusal to abide by this simple distinction constitutes a usurpation of Congressional authority to determine which business are eligible for PPP funds. Without question, Defendant lacked the authority to change the PPP eligibility requirements and exclude Plaintiff.

C.    Protection Against Discriminatory Treatment.

11 U.S.C. § 525(a) provides:

(a) . . . a governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, deny employment to, terminate the employment of, or discriminate with respect to employment against, a person that is or has been a debtor under this title or a bankrupt or a debtor under the Bankruptcy Act, or another person with whom such bankrupt or debtor has been associated, solely because such bankrupt or debtor is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act, has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act.

Plaintiff argues that Defendant's decision to exclude debtors from the PPP violates § 525(a). The Court agrees. In *Stolz v. Brattleboro Housing Auth. (In re Stoltz)*, 315 F.3d 80 (2d Cir. 2002), the Second Circuit analyzed the term "other similar grant:"

The term "other similar grant" is not defined by the code. In common parlance, a grant is "a transfer of property by deed or writing." *Merriam Webster's Collegiate Dictionary* 507 (10th ed. 2000). As a legal term, a grant is "[a]n agreement that

> creates a right of any description other than the one held by the grantor. Examples include *leases,* easements, charges, patents, franchises, powers, and licenses." *Black's Law Dictionary* 707 (7th ed.1999) (emphasis added). Similarly, a lease is "[a] contract by which a rightful possessor of real property conveys the right to use and occupy that property in exchange for consideration." *Id.* at 898.
>
> . . .
>
> The common qualities of the property interests protected under section 525(a), i.e., "license[s], permit[s], charter[s], franchise[s], and other similar grants," are that these property interests are unobtainable from the private sector and essential to a debtor's fresh start.

*Id.* at 88-90. *See also In re Saunders*, 105 B.R. 781, 788 (Bankr. E.D. Pa. 1989) (government refusal to give debtor an education grant because of her bankruptcy could violate § 525(a), although the court decided that it did not need to reach the issue); *In re Oksentowicz*, 314 B.R. 638 (Bankr. E.D. Mich. 2004), affirmed, 2005 WL 7466596 (E.D. Mich. 2005) (landlord's rejection of a chapter 7 debtor housing application violated § 525(a) because the housing complex was considered a governmental unit); *In re Haffner*, 25 B.R. 882, 887 (Bankr. N.D. Ind. 1982) (government refusal to include debtor in a price support program because of debtor's refusal to repay pre-petition debts violated § 525(a)); *In re Howren*, 10 B.R. 303 (Bankr. D. Kan. 1980) (state university withholding transcript unless debtor paid its prepetition loan violated § 525(a)).

As shown above, the PPP is not a loan program.[8] It is a grant or support program. The target grant recipients are small businesses in financial distress. The PPP could only be offered by the government; private lenders do not give away money. PPP funds "are unobtainable from the private sector." *Stolz*, 315 F.3d at 90. They also are essential to Plaintiff's fresh start. *Id.* Of all the benefits a government can grant, free money might be the best of all. Denying Plaintiff access to PPP funds solely because it is a debtor violates § 525(a).

---

[8] The government does not violate § 525(a) by taking borrower's bankruptcy status into account when considering a loan application. *See, e.g., Watts v. Pennsylvania Housing Fin. Co.*, 876 F.2d 1090, 1094 (3d Cir. 1989); *Ayes v. U.S. Department of Veterans Affairs*, 473 F.3d 104, 110 (4th Cir. 2006).

### III. CONCLUSION

With only the flimsiest of justifications Defendant took one of many underwriting criteria from its "normal" loan programs (bankruptcy status of the borrower), changed it to an eligibility condition, and then applied it to an emergency grant program where it clearly had no place. Defendant's inexplicable and highhanded decision to rewrite the PPP's eligibility requirements in this way was arbitrary and capricious, beyond its statutory authority, and in violation of 11 U.S.C. § 525(a). By a separate final judgment, the Court will grant Plaintiff the relief it requests. If Defendant's actions result in Plaintiff not obtaining the $900,000 it requested, Plaintiff may file an adversary proceeding for compensatory and, if appropriate, punitive damages.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: May 1, 2020
Copies to: counsel of record